UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAMES W. D'AMICO, on behalf of himself and
all others similarly situated,

                Plaintiff,

v.

WASTE MANAGEMENT OF
NEW YORK, LLC,

                Defendant.
_____



**DECISION AND ORDER**

6:18-CV-06080 EAW

## INTRODUCTION

Plaintiff James W. D'Amico ("Plaintiff") brings this putative class action, on behalf of himself and all others similarly situated, against Defendant Waste Management of New York, LLC ("Defendant"), alleging common law claims for public nuisance and negligence arising from Defendant's operation of the High Acres Landfill and Recycling Center (the "Landfill") in Perinton, New York. (Dkt. 38). Specifically, Plaintiff alleges that Defendant's operation of the Landfill has caused noxious odors to be emitted into the surrounding environment, resulting in property damage to himself and the owner/occupants and renters in the surrounding area. (*Id.* at 2-5).

Presently before the Court is Defendant's motion to dismiss Plaintiff's Second Amended Complaint (the "SAC"). (Dkt. 39). For the following reasons, Defendant's motion is granted in part and denied in part.

## BACKGROUND[1]

Defendant operates the Landfill on a 1,100-acre site and "accepts municipal solid waste, industrial and special waste, construction and demolition debris, and other waste for disposal." (Dkt. 38 at ¶¶ 4, 6). As the waste decomposes at the Landfill, it creates "odorous landfill gas, leachate, and other byproducts." (*Id.* at ¶ 7). Defendant is obligated to control these odorous emissions by, among other things, "following proper landfilling practices, utilizing adequate landfill cover, and installing, operating, and maintaining a sufficient landfill gas collection system to capture and destroy landfill gas." (*Id.* at ¶ 10). In order to maintain an effective landfill gas collection system (the "Collection System"), Defendant must prevent "excess liquid" from entering the system and interfering with its operation. (*Id.* at ¶ 11).

Defendant has allegedly failed to satisfactorily control the odors emitted from the Landfill. (*Id.* at ¶ 12). Specifically, Plaintiff claims that Defendant has failed to properly operate the Collection System and has allowed it to become "watered in." (*Id.*). This alleged operating failure is due to inadequate drainage systems, Defendant's reliance upon vertical gas wells, insufficient preparation for wet weather conditions, an "inadequate wellhead vacuum," the failure to properly monitor the system and use a proper "cover and covering practices," and the "inadequate use of odor neutralizing systems and products." (*Id.*).

---

[1] The following facts are taken from the SAC unless otherwise indicated. (Dkt. 38).

As a result, Defendant has allegedly released "odorous emissions . . . onto the property of Plaintiff and the class on occasions too numerous to recount individually." (*Id.* at ¶ 13). The odors are "offensive" and have interfered with Plaintiff's and the putative class members' use and enjoyment of their property. (*Id.* at ¶ 14). Plaintiff claims that "Defendant's emissions are especially injurious to the Class as compared with the public at large, given the impacts to their homes." (*Id.* at ¶ 15). In particular, these emissions have caused a diminution in the value of Plaintiff's and the putative class members' property. (*Id.* at ¶ 16).

Numerous individuals have filed complaints with the New York State Department of Environmental Conservation (the "DEC") detailing the noxious odors in the community. (*Id.* at ¶ 17). "[M]ore than 180 households have contacted Plaintiffs' counsel documenting the odors they attribute to" the Landfill. (*Id.* at ¶ 18).

Plaintiff defines the putative class as follows: "All (a) owner/occupants and (b) renters of residential property residing within two and one-half (2.5) miles of the Defendant's Landfill." (*Id.* at ¶ 20). Plaintiff also claims that "there are over three thousand (3,000) households within the 2.5-mile radius that are being impacted." (*Id.* at ¶ 21).

## **PROCEDURAL HISTORY**

On January 26, 2018, Plaintiff commenced this putative class action, on behalf of himself and all others similarly situated, seeking compensatory and punitive damages as well as injunctive relief under theories of common law nuisance, negligence, and gross negligence. (Dkt. 1). On April 27, 2018, Plaintiff filed an Amended Complaint, which

removed Waste Management, Inc. as a defendant. (Dkt. 4). On July 23, 2018, Defendant filed a motion to dismiss. (Dkt. 13). This Court held oral argument on Defendant's motion on December 7, 2018, and reserved decision. (Dkt. 27).

On March 25, 2019, the Court issued a Decision and Order granting Defendant's motion to dismiss in part and denying it in part. (Dkt. 33). The Court dismissed Plaintiff's claims for public nuisance and gross negligence without prejudice for failure to state a claim and denied Defendant's motion on all other grounds. (*Id.*). On April 4, 2019, Plaintiff filed the SAC,[2] which remains the operative pleading in this matter. (Dkt. 38). On April 25, 2019, Defendant filed a motion to dismiss the SAC. (Dkt. 39). Plaintiff opposes Defendant's motion. (Dkt. 41). On August 7, 2019, the Court held oral argument on Defendant's motion as well as the pending motions in the related litigation in *Fresh Air for the Eastside, Inc. v. Waste Mgmt. of N.Y., L.L.C.*, Case No. 6:18-cv-06588-EAW, and reserved decision. (Dkt. 42; Dkt. 44; Dkt. 46; Dkt. 47).

## DISCUSSION

### I. Motion to Dismiss Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court

---

[2]  Plaintiff filed an unopposed motion for leave to file a second amended complaint on March 29, 2019 (Dkt. 34), and the parties filed a stipulation consenting to the filing of a second amended complaint on April 2, 2019 (Dkt. 36). The Court granted Plaintiff's motion on April 3, 2019. (Dkt. 37).

- 4 -

should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## II. <u>Ordinary Negligence</u>[3]

Under New York law, "a plaintiff must establish three elements to prevail on a negligence claim: '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach

---

[3] During oral argument, Plaintiff's counsel confirmed that the SAC does not include a claim for gross negligence.

of this duty; and (3) injury to the plaintiff as a result thereof.'" *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) (quoting *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333 (1981)).

While "acknowledg[ing] that this Court declined to dismiss Plaintiff's negligence count" in its March 25, 2019, Decision and Order, Defendant seeks to relitigate that issue "[s]hould the Court wish to revisit the negligence issue." (Dkt. 39-1 at 21). This Court's previous determination that the Amended Complaint sufficiently stated an ordinary negligence claim remains controlling here under the law of the case doctrine because the SAC sets forth almost the exact same allegations as the Amended Complaint. *See Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) ("The law of the case doctrine commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." (quotation omitted)). Accordingly, to the extent Defendant's motion is directed to the negligence claim, it is denied.

### III. <u>Public Nuisance</u>

In its March 25, 2019, Decision and Order, the Court dismissed Plaintiff's public nuisance cause of action without prejudice for the failure to plausibly allege that Defendant's actions substantially interfered with a right held in common by the general public. (Dkt. 33 at 9). As the Court previously found: "A review of the allegations contained in the Amended Complaint reveals that it does not once specifically allege that Defendant's operation of the Landfill has interfered with a right held in common by the

public." (*Id.* at 7). Accordingly, the claim was dismissed without prejudice and the Court did not reach Defendant's other challenges to the public nuisance claim. (*Id.* at 9).

With its present motion, Defendant contends that Plaintiff failed to remedy the deficiencies identified by the Court in its March 25, 2019, Decision and Order (Dkt. 39-1 at 7-10), and continues to inadequately set forth factual allegations demonstrating the existence of a "special injury" as required for a private litigant to bring a public nuisance claim (*id.* at 11-20). Plaintiff opposes Defendant's motion, arguing that he has specifically alleged that "Defendant's emissions have substantially interfered with rights common to the general public, including the right to uncontaminated and/or unpolluted air." (Dkt. 41 at 4 (quoting Dkt. 38 at ¶ 35)). Plaintiff also contends that he has alleged facts demonstrating that the putative class members have suffered a "special injury" beyond the harm sustained by the public at large. (*Id.* at 5-10). Plaintiff argues that because Defendant's alleged nuisance activities impact individuals in the community outside those who compose the putative class, the diminution in property values sustained by the putative class members constitutes an injury distinct from that suffered by the general public. (*Id.*).

A. **Legal Standard**

"There are two types of nuisance actions in New York State, public nuisance and private nuisance." *Hicksville Water Dist. v. Philips Elecs. N. Am. Corp.*, No. 2:17-CV-04442 (ADS)(ARL), 2018 WL 1542670, at *7 (E.D.N.Y. Mar. 29, 2018). "Public and private nuisance bear little relationship to each other. Although some rules apply to both, other rules apply to one but not the other." *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1050 (2d Cir. 1985). "A public nuisance under New York law exists when there is a

substantial interference with a public right." *Johnson v. Bryco Arms*, 304 F. Supp. 2d 383, 390 (E.D.N.Y. 2004). By contrast, "[a] private nuisance threatens one person or a relatively few, an essential feature being an interference with the use or enjoyment of land." *Copart Indus., Inc. v. Consol. Edison Co. of N.Y.*, 41 N.Y.2d 564, 568 (1977); *see Scribner v. Summers*, 84 F.3d 554, 559 (2d Cir. 1996) (same). "A nuisance is the actual invasion of interests in land, and it may arise from varying types of conduct." *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 292 (2001). Generally speaking, a landowner "is subject to liability for either a public or private nuisance on its property upon learning of the nuisance and having a reasonable opportunity to abate it." *Shore Realty Corp.*, 759 F.2d at 1050 (footnote omitted).

The New York Court of Appeals has explained:

> "A public nuisance exists for conduct that amounts to a substantial interference with the exercise of a common right of the public, thereby offending public morals, interfering with the use by the public of a public place or endangering or injuring the property, health, safety or comfort of a considerable number of persons."

*532 Madison Ave.*, 96 N.Y.2d at 292. "It is uncontested that the historical purpose of the doctrine of public nuisance was primarily to protect the public from harm or danger; the same is equally true of the modern tort of public nuisance." *N.A.A.C.P. v. AcuSport, Inc.*, 271 F. Supp. 2d 435, 481 (E.D.N.Y. 2003). For this reason, a public nuisance is considered "an offense against the State and is subject to abatement or prosecution on application of the proper governmental agency." *Copart Indus., Inc.*, 41 N.Y.2d at 568. "The State has standing to bring actions for public nuisance as a matter of course in its role as 'guardian

of the environment.'" *Chase Manhattan Bank, N.A. v. T & N PLC*, 905 F. Supp. 107, 125 (S.D.N.Y. 1995) (quoting *Shore Realty Corp.*, 759 F.2d at 1051).

"Generally, '[a] public nuisance is actionable by a private person only if it is shown that the person suffered special injury beyond that suffered by the community at large.'" *Janki Bai Sahu v. Union Carbide Corp.*, 528 F. App'x 96, 101 n.4 (2d Cir. 2013) (alteration in original) (quoting *532 Madison Ave.*, 96 N.Y.2d at 292); *see Johnson*, 304 F. Supp. 2d at 392 ("A private plaintiff does not have standing to bring a public nuisance cause of action unless he or she shows some harm different from that suffered by the public generally."). "In this way, a private wrong may be distinguished from a common injury to the public, and a private right of action is restored." *Baker v. Saint-Gobain Performance Plastics Corp.*, 232 F. Supp. 3d 233, 248 (N.D.N.Y. 2017) (citing *Kavanagh v. Barber*, 131 N.Y. 211, 214 (1892) ("The public nuisance as to the person who is specially injured thereby in the enjoyment or value of his lands becomes a private nuisance also.")); *see also* 81 N.Y. Jur. 2d Nuisances § 6 (2018) ("[A] public nuisance becomes also a private nuisance as to any person who is specially injured by it to any extent beyond the injury to the public." (citing *Ackerman v. True*, 175 N.Y. 353, 360-61 (1903))). "This principle recognizes the necessity of guarding against the multiplicity of lawsuits that would follow if everyone were permitted to seek redress for a wrong common to the public." *532 Madison Ave.*, 96 N.Y.2d at 292.

### B. A Special Injury Distinct from that Suffered by the Public at Large

Plaintiff has added just one new allegation in the SAC, which provides as follows: "Apart from the property damage incurred by Plaintiff and the Class, Defendant's

emissions have substantially interfered with rights common to the general public, including the right to uncontaminated and/or unpolluted air." (Dkt. 38 at ¶ 35). Defendant contends that Plaintiff's public nuisance cause of action should be dismissed because Plaintiff has failed to set forth sufficient factual allegations demonstrating a substantial interference with a public right or that the putative class has suffered a "special injury" that is different in kind from the harm sustained by the general community. (Dkt. 39-1 at 7-20).

The Court is underwhelmed by Plaintiff's efforts to rectify the pleading deficiencies outlined in its March 25, 2019, Decision and Order.[4] Aside from adding a conclusory phrase that Defendant's emissions have interfered with rights common to the general public, Plaintiff has made no effort to set forth *facts* plausibly alleging that his claim satisfies the standard for a public nuisance by substantially interfering with rights held in common by the public. Moreover, even if Plaintiff has alleged sufficient facts to satisfy the substantial interference with public right element of the claim, Plaintiff has failed to plausibly allege a "special injury" that is distinct from any harm suffered by the public at large.

Only two paragraphs in the SAC set forth allegations pertaining to a "special injury" sustained by the putative class. Plaintiff attempts to satisfy this element of a public

---

[4] On September 4, 2019, Plaintiff's counsel filed a post-argument letter attaching a recent decision from the District Court of Nebraska denying a motion to dismiss directed to a public nuisance complaint apparently filed by Plaintiff's counsel in that district. (Dkt. 48). The fact that Plaintiff's counsel was able to convince the District Court of Nebraska that its conclusory allegations passed muster and withstood a motion to dismiss challenge, does not persuade this Court that it should overlook Plaintiff's insufficient efforts to plausibly allege a public nuisance claim under New York law.

nuisance claim by alleging that "Defendant's emissions are especially injurious to the Class as compared with the public at large, given the impacts to their homes," and that "Defendant's odorous emissions have reduced the value of the homes of Plaintiff and the Class." (Dkt. 38 at ¶¶ 15-16). During oral argument Plaintiff's counsel claimed that the emissions also impact other individuals who work, recreate, or travel in the vicinity of the Landfill, but Defendant's counsel cogently observed that no such facts were alleged in the SAC. In other words, Plaintiff has alleged no facts plausibly suggesting that the relevant community extends beyond the putative class at issue.

Diminished property values may constitute a "special injury" under New York law. *See, e.g., Agoglia v. Benepe*, 84 A.D.3d 1072, 1077 (2d Dep't 2011) (finding that "the petitioner adequately stated a cause of action to abate a public nuisance" where, "in addition to the alleged environmental injuries, the petition alleged that the dunes adversely affected property values on the subject streets, a harm not suffered by the community at large"); *Scheg v. Agway, Inc.*, 229 A.D.2d 963, 964 (4th Dep't 1996) ("[T]heir complaint, insofar as it alleges that the value of their property was diminished as a result of its proximity to the landfill, does state a cause of action."); *Ass'n for Cmty. Reform Now ("Acorn") v. Bloomberg*, 13 Misc. 3d 1209(A), 2006 WL 2686520, at *17 (Sup. Ct., N.Y. Cty. 2006) ("The alleged depreciation in plaintiffs' property values, if proven, would constitute special injury resulting from the air pollution, noise pollution, odor and traffic that allegedly would arise out of the proposed [Marine Transfer Station]."), *aff'd*, 52 A.D.3d 426 (1st Dep't 2008). However, "when the class harmed in the same way becomes so large and general as to include all members of the public who come in contact with the

nuisance . . . the private action will fail." *AcuSport, Inc.*, 271 F. Supp. 2d at 498 (alteration in original) (quotation omitted). Stated differently, "[a]llegations of pecuniary injury may be sufficient to satisfy the peculiar injury test so long as the injuries involved are not common to the entire community exercising the same public right." *Leo v. Gen. Elec. Co.*, 145 A.D.2d 291, 294 (2d Dep't 1989) (citation omitted); *see AcuSport, Inc.*, 271 F. Supp. 2d at 498 ("[P]ecuniary loss . . . suffered by a private plaintiff may satisfy this requirement, but not when they are so widespread as to affect a whole community, or a very wide area within it." (quotation omitted)).

Plaintiff states in a conclusory manner that Defendant's operation of the Landfill has substantially interfered with the public's right to uncontaminated air and that the putative class has suffered diminished property values as a result. However, Plaintiff has set forth *no facts* to plausibly support a conclusion that this alleged pecuniary loss does not affect the entire community under consideration. If the "economic loss was 'common to [the] entire community . . ., it is not a different kind of harm and the plaintiffs cannot recover for the invasion of the public right.'" *532 Madison Ave.*, 96 N.Y.2d at 294 (original alteration omitted) (quoting Restatement (Second) of Torts § 821C, comment h). Plaintiff's allegation that the noxious emissions are "especially injurious to the Class as compared with the public at large, given the impacts to their homes" (Dkt. 38 at ¶ 15) is insufficient—it constitutes a mere "recitation of the elements of [the] claim [and] is not enough to satisfy federal pleading requirements," *Read v. Corning Inc.*, 351 F. Supp. 3d 342, 359 (W.D.N.Y. 2018). Like the *Read* plaintiffs, Plaintiff has "not alleged *any facts* to

support a finding of special injury or damages." *Id.* Accordingly, Plaintiff's public nuisance cause of action is dismissed for failure to state a claim.

However, despite Defendant's suggestion to the contrary, the Court finds that a dismissal with prejudice would be inappropriate. The Court disagrees with Defendant's position that at this juncture, the Court should conclude that the putative class is categorically precluded from establishing a special injury simply because it is composed of a large number of individuals who allegedly suffer the same type of injury. (Dkt. 39-1 at 14-18); *see Francis v. Schoellkopf*, 53 N.Y. 152, 154 (1873) ("The idea that if by a wrongful act a serious injury is inflicted upon a single individual a recovery may be had therefor against the wrong-doer, and that if by the same act numbers are so injured no recovery can be had by anyone, is absurd."). A "special injury" need not be "unique," it must only be different in kind from the harm sustained by the public at large. *See Wakeman v. Wilbur*, 147 N.Y. 657, 663 (1895) ("the fact that numerous other persons have been injured by the act is no ground for a denial of the relief" for a public nuisance); *Francis*, 53 N.Y. at 154-55 ("[O]ne erecting or maintaining a common nuisance is not liable to an action at the suit of one who has sustained no damage therefrom except such as is common to the entire community, yet he is liable at the suit of one who has sustained damage peculiar to himself. *No matter how numerous the persons may be who have sustained this peculiar damage*, each is entitled to compensation for his injury." (emphasis added)); *see also Sierra Club v. Vill. of Painted Post*, 26 N.Y.3d 301, 311 (2015) (in the context of an Article 78 proceeding to enforce the State Environmental Quality Review Act, stating that

the harm alleged "need not be unique" and that "[t]he number of people who are affected by the challenged action is not dispositive of standing").

"[T]he proper inquiry is not whether Plaintiff[] ha[s] alleged an injury different in kind from other property owners. . . . Rather, it is whether Plaintiff[] ha[s] alleged an injury different in kind from the community at large." *Cangemi v. United States*, 939 F. Supp. 2d 188, 206 (E.D.N.Y. 2013) (citation omitted). A public nuisance claim involves interference with "the exercise of *rights common to all*, in a manner such as to offend public morals, interfere with use by the public of a public place or endanger or injure the property, health, safety or comfort of *a considerable number of persons*." *See Copart Indus., Inc.*, 41 N.Y.2d at 568 (emphases added); *see also AcuSport, Inc.*, 271 F. Supp. 2d at 482 ("'Public nuisance,' in addition to referring to a field of tort liability, is used to refer more narrowly to 'the consequences of conduct'—that is, to the invasion of the public right on which a claim for public nuisance must be based."); *Reid v. Kawasaki Motors Corp., U.S.A.*, 189 A.D.2d 954, 957 (3d Dep't 1993) ("The *sine qua non* of an action for public nuisance . . . is the interference by a defendant with a public right."). The more numerous the affected individuals the more likely the alleged injury is *not* different in kind from that suffered by the general public, but the mere fact that the putative class contains a significant number of injured individuals does not necessarily mean that Plaintiff is unable to allege a harm distinct in kind from "the entire community exercising the same public right." *Leo*, 145 A.D.2d at 294. To hold otherwise would be to deny a group of affected individuals the right to pursue a private nuisance claim due to the widespread nature of the alleged harm while simultaneously denying those same individuals the right to pursue a public

nuisance claim due to the concomitant fact that many individuals have been so injured. While there may be instances where private litigants are factually unable to pursue either cause of action due to the widespread nature of the alleged harm, to categorically preclude Plaintiff and the putative class from even attempting to set forth sufficient facts demonstrating the public harm as distinguished from the existence of a "special injury" would be inappropriate.

Here, Plaintiff has failed to set forth factual allegations describing the scope of the relevant community affected by the Landfill, leaving it unclear whether the pecuniary interest alleged is, in fact, an injury different in kind from that sustained by the general public. If Plaintiff can plausibly allege that the members of the putative class do not constitute "all members of the public who come in contact with the nuisance," *AcuSport, Inc.*, 271 F. Supp. 2d at 498 (quotation omitted)—as suggested by Plaintiff's counsel during oral argument—Plaintiff may yet be able to assert a public nuisance cause of action, *see also Iannucci v. City of New York*, No. CV-02-6135 (CPS), 2006 WL 1026432, at *4 (E.D.N.Y. Apr. 19, 2006) ("While the entire community is injured in that its access to public streets and sidewalks is restricted due to defendants' illegal parking, plaintiff has sustained 'special injuries' in that his driveways and parking lots are blocked and the value of his properties has decreased as a result of the parking."); *Concerned Area Residents for The Env't v. Southview Farm*, 834 F. Supp. 1410, 1421 (W.D.N.Y. 1993) (the court was "not convinced at [the summary judgment] stage that plaintiffs cannot show at trial that they have suffered some harm peculiar to themselves by virtue of their status as landowners and residents near" the polluting activity); *Ouellette v. Int'l Paper Co.*, 602 F. Supp. 264,

274 (D. Vt. 1985) ("Plaintiffs allege . . . that the discharges from defendant's mill 'interfere with [p]laintiffs' use and enjoyment of their property and have decreased the market value and rental value of their property.' Such an allegation is sufficient to state a private cause of action for a 'nuisance' which might generally be classified as 'public.'"), *aff'd*, 776 F.2d 55 (2d Cir. 1985), *aff'd in part, rev'd in part on other grounds*, 479 U.S. 481 (1987); *see also Francis*, 53 N.Y. at 154 (a nuisance was actionable where "offensive smells" made the plaintiff "unable to rent one of her houses at all for a portion of the time" and required her to rent another "for a less[er] sum than she could have otherwise obtained," even though "other houses in the vicinity" were similarly affected); *cf. 532 Madison Ave.*, 96 N.Y.2d at 293 ("*[E]very person* who maintained a business, profession or residence in the heavily populated areas of Times Square and Madison Avenue was exposed to similar economic loss during the closure periods." (emphasis added)); *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 334 (1983) (finding no special injury where "out-of-pocket expenses" and "loss of business profits" resulting from a transit strike was "suffered by *every person, firm and corporation* conducting his or its business or profession *in the City of New York*" (emphases added)). Accordingly, Plaintiff's public nuisance cause of action is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, to the extent Defendant requests that the Court reconsider its previous determination as to the viability of Plaintiff's negligence claim, Defendant's motion (Dkt. 39) is denied, but Defendant's motion is granted insofar as Plaintiff's public nuisance cause of action is dismissed without prejudice for failure to state a claim.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: September 9, 2019
Rochester, New York