**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| JAMES W. D'AMICO on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 6:18-cv-06080-EAW |
| vs. | ) ) | |
| WASTE MANAGEMENT OF NEW YORK, LLC, | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF JAMES W. D'AMICO'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Steven D. Liddle
sliddle@ldclassaction.com
Nicholas A. Coulson
ncoulson@ldclassaction.com
LIDDLE & DUBIN, P.C.
975 E. Jefferson Ave
Detroit, MI 48207
(313) 392-0015

Jan M. Smolak
smolak@michaels-smolak.com
MICHAELS & SMOLAK, P.C.
Office and P.O. Address
17 East Genessee Street, Suite 401
Auburn, New York 13021
(315) 253-3292

*Attorneys for Plaintiff and the Putative Class*

## TABLE OF CONTENTS

page

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................1

LEGAL STANDARD........................................................................................................5

ARGUMENT .....................................................................................................................6

I.     THE COURT IS LIKELY TO ULTIMATELY APPROVE THE SETTLEMENT AS FAIR, ADEQUATE, AND REASONABLE.........................6

     A.  The Class Representatives and Class Counsel Have Adequately Represented the Class .........................................................................7

     B.  The Proposal Was Negotiated at Arm's Length ...............................9

     C.  The Relief Provided for the Class is Adequate ................................9

     D.  The Proposal Treats Class Members Equitably Relative to Each Other .........18

II.    THE COURT IS LIKELY TO CERTIFY THE CLASS FOR SETTLEMENT PURPOSES..................................................................19

     A.  The Settlement Class is Ascertainable ...........................................19

     B.  The Settlement Class Satisfies the Numerosity Requirement.........20

     C.  The Settlement Class Satisfies the Commonality Requirement ....20

     D.  The Settlement Class Satisfies the Typicality Requirement...........21

     E.  The Settlement Class Satisfies the Adequacy of Representation Requirement...................................................21

     F.  The Settlement Class Satisfies the Predominance Requirement....23

     G.  The Settlement Class Satisfies the Superiority Requirement .........24

     H.  The Notice Proposal is Appropriate................................................25

CONCLUSION.................................................................................................................25

i

## <u>TABLE OF AUTHORITIES</u>

page(s)

**<u>Cases</u>**

*Babb v. Lee Cty. Landfill SC, LLC*, S.E.2d 468 (2013) ..................................................13

*Babb v. Lee Cty. Landfill SC, LLC*, 298 F.R.D. 318 (D.S.C. 2014) ............................13

*Batties v. Waste Mgmt. of Pa., Inc.*, No. 14-7013,
2016 U.S. Dist. LEXIS 186335 (E.D. Pa. May 11, 2016) ................................ 7, 12, 18, 19, 20-21

*Beck v. Stony Hollow Landfill, Inc.,* No. 3:16-cv-455,
2018 U.S. Dist. LEXIS 199221 (S.D. Ohio Nov. 26, 2018) .........................................8

*Brecher v. Republic of Argentina*, 806 F.3d 22 (2d Cir. 2015)...................................19

*Brooks v. Darling Int'l, Inc.,* No. 1:14-cv-01128-DAD-EPG,
2017 U.S. Dist. LEXIS 49660 (E.D. Cal. Mar. 30, 2017) ...........................................13

*Cagan v. Anchor Sav. Bank FSB*, No. CV-88-3024,
1990 U.S. Dist. LEXIS 11450 (E.D.N.Y. May 17, 1990) ...........................................11

*City of Birmingham Ret. & Relief Sys. v. Davis*, No. 19-1378-cv,
2020 U.S. App. LEXIS 8686 (2d Cir. Mar. 17, 2020)...................................................16

*Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011) ...............................11

*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ...............................................11

*Grice v. Pepsi Bevs. Co.*, 363 F. Supp. 3d 401 (S.D.N.Y. 2019)............................................11, 17

*Hamilton v. 3D Idapro Sols., LLC*, No. 18-cv-54-jdp,
 2019 U.S. Dist. LEXIS 128217 .D. Wis. Aug. 1, 2019)..............................................13

*Hardgers-Powell v. Angels In Your Home LLC*, 330 F.R.D. 89 (W.D.N.Y. 2019) ...............21, 23

*Hart v. RCI Hosp. Holdings, Inc*., No. 09 Civ. 3043 (PAE),
2015 U.S. Dist. LEXIS 126934 (S.D.N.Y. Sept. 22, 2015)........................................15

*In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ..............................11

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483 (S.D.N.Y. 2018) ..11, 12, 15

*In re Lloyd's American Trust Fund Litig.*, No. 96 Civ. 1262,
2002 U.S. Dist. LEXIS 22663, (S.D.N.Y. Nov. 26, 2002) ........................................17

*In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104 (S.D.N.Y.),
*aff'd*, 117 F.3d 721 (2d Cir. 1997) (per curiam) ..........................................................15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ...............................................................................23

*Ivory v International Bus. Machines Corp.*, 2012 N.Y. Misc. LEXIS 6126,
2012 NY Slip Op 52125(U) (Broome Cty. Sup. Ct. Nov. 15, 2012).............................10

*Jenkins v. Etlinger*, 432 N.E.2d 589 (NY Ct. App. 1982) ...........................................10

*McCarty v. Oklahoma City Landfill, Inc.*
(W.D. Okla. Case No. CIV-12-1152-C, April 11, 2016)..............................................12

*Nalley v. General Elec. Co.*, 165 Misc. 2d 803 (Rensselaer Cty. Sup. Ct. 1995).........10

*Ng v. International Disposal Corp. of California*,
Case No. 112CV228591 (Santa Clara, CA Super. Ct. , August 1, 2016)......................12

*Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650 (S.D.N.Y. 2015) ........................15

*McReynolds v. Richards-Cantave*, 588 F.3d 790 (2d Cir. 2009)....................................6

*Padovano v. FedEx Ground Package Sys.*, No. 16-CV-17-FPG,
2019 U.S. Dist. LEXIS 107092 (W.D.N.Y. June 10, 2019)................................. *passim*

*Ponca Tribe of Indians v. Cont'l Carbon Co.*, No. CIV-05-445-C,
2007 U.S. Dist. LEXIS 577 (W.D. Okla. Jan. 3, 2007)...............................................25

*Powell v. Tosh*, No. 5:09-CV-00121, 2013 U.S. Dist. LEXIS 120448
(W.D. Ky. Aug. 2, 2013) ...........................................................................................13

*Spencer v. No Parking Today, Inc.*, 2013 U.S. Dist. LEXIS 36357 (S.D.N.Y. Mar. 15, 2013)....20

*Velez v. Novartis Pharm. Corp.*, 2010 U.S. Dist. LEXIS 125945
(S.D.N.Y. Nov. 30, 2010) ..................................................................................5, 16, 17

*Volunteer Fire Assn. of Tappan, Inc. v. County of Rockland*,
101 A.D.3d 853, 857 (2nd Dep't. 2012) .....................................................................10

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). ......................................13, 20

## **Statutes**

Fed. R. Civ. P. 23 ................................................................................................. *passim*

**<u>Other Sources</u>**

Herbert B. Newberg, *Newberg on Class Actions* (3rd ed.)............................................................9

4 William B. Rubenstein, *Newberg on Class Actions* (5th ed.) (Westlaw 2018) ...................15, 23

Plaintiff James D'Amico is pleased to present the Court with the Settlement Agreement reached in this matter and moves under Federal Rule of Civil Procedure 23(e) for its preliminary approval.

## PRELIMINARY STATEMENT

This action was filed on January 26, 2018. (ECF No. 1). Plaintiff D'Amico alleges on behalf of himself and a class of similarly situated persons that Defendant, the owner/operator of the High Acres Landfill, has failed to control that landfill's emissions such that the emissions have been transported onto the Class' residential properties. He alleges that the emissions are malodorous and therefore interfere with Class members' ability to use and enjoy their homes, reducing the homes' usable value in the process.

Before and after initiating the litigation, Plaintiff, through his counsel, conducted an extensive investigation of the High Acres Landfill and the odor problem that he alleges. (Declaration of Nicholas A. Coulson "Coulson Decl." ¶ 11). The investigation included a detailed inquiry into reports of odors from the landfill, public information requests to governmental entities, receiving and reviewing large volumes of public documents, and surveying thousands of area residents. (*Id.*). Substantial time was also devoted to researching the complex legal issues at play in this case. The available information and comprehensive legal research provided a sufficient basis for Plaintiffs to be well informed regarding their likelihood of prevailing on issues of class certification, merits, and damages. (*See Id.* ¶13).

This case has been fiercely contested by Defendant. Defendant filed two motions to dismiss (ECF No. 13; 39), each of which was granted in part and denied in part. (ECF No. 33; 49). In summary, the Court denied Defendant's efforts to dismiss Plaintiff's claims on the basis of judicial abstention doctrines, and for failure to state a negligence claim, but twice dismissed Plaintiff's

1

public nuisance claims without prejudice. (*Id.*) Plaintiff has sought leave to file a Third Amended Complaint providing greater factual support for his public nuisance claim. (ECF No. 53). The Court did not rule on that motion before the mediator notified the Court that the parties had reached an agreement in principle on the primary settlement terms. (*See* ECF No. 76).

The Court's management orders required the parties to conduct a mediation session by February 14, 2020. (ECF No. 69; 74). The parties selected former Magistrate Judge William G. Bauer, who conducted a full day mediation session in Rochester, New York on February 4, 2020. (ECF No. 76; Coulson Decl. ¶ 11). The negotiation process was extensive, and each side aggressively pursued its position. While agreement was reached on the principal terms at the mediation, the parties continued to negotiate the terms of settlement for more than four more months. (*Id.*) Finally, in June of 2020, the parties agreed to the terms of the Settlement Agreement. (*Id.*)

The Settlement Agreement **(Exhibit 1)** provides substantial benefits for the Class, and importantly, *does not release claims based on personal injury or future emissions*. The Settlement Agreement requires Defendant to pay $1.3 million into a fund for the benefit of the Class Members. After the deduction of such attorney fees, costs/expenses, and incentive awards as the Court may grant, the fund will be distributed on a *pro rata* basis to all Class Member households that timely submit approved Claim Forms. Additionally, the Settlement Agreement requires Defendant to implement an additional $1,000,000 worth of improvement measures to the High Acres Landfill to reduce the potential for odor emissions. The specific expenditures include:

i.      Installation and operation of additional landfill gas collection and control devices comprised of vertical and horizontal gas extraction systems;

ii.      Installation and operation of waste mass dewatering pumps and control;,

iii.     Procurement and deployment of synthetic alternate daily cover systems (membrane) that eliminates the need to remove cover daily and design; and

iv.     Installation and operation of nearly 1 mile of an additional water- and vapor-based odor control misting system.

The proposed Settlement Class is defined as:

all owner/occupants, tenants, renters or lessees of residential property within the Class Area during the time period of January 26, 2015 through the Effective Date (the "Class Period").

The Settlement Agreement provides that "Class Area" shall mean the area within an approximately 2.5 mile radius from the center of the Landfill located at 425 Perinton Parkway, Fairport, New York 14450, and as specifically delineated in the Class Area Map, attached as **Exhibit A to the Settlement Agreement**. "Effective Date" means the date on which this settlement becomes binding as to all parties, which shall be the date on which the Final Judgment and Order approving the settlement becomes Final.[1]

The release to which Class members will be subject for remaining in the Settlement Class is properly limited in scope. (**Ex. 1**, ¶ 8). In general, it releases claims "for, based on, by reason of, or arising from in any way the conduct alleged in Plaintiff's Complaint, Amended Complaint, Second Amended Complaint, or Proposed Third Amended Complaint filed in this Action[.]" (*Id.*) Importantly, though, the release specifically excludes "any claim arising out of the violation of breach of the Settlement Agreement" and states that "[a]nything to the contrary herein

---

[1] "Final," in turn, is defined as "the later of the following dates: i. the date of expiration of the time for filing or noticing of any appeal from the Final Judgment and Order, that is, thirty days after the entry of the Final Judgment and Order computed in accordance with Federal Rule of Civil Procedure 6(a); ii. the date of final affirmance of any appeal, the date of expiration of the time for filing petitions for writs of certiorari and, if certiorari is granted, the date of final affirmance following review pursuant to that grant; or iii. the final dismissal of any appeal or proceeding on certiorari." (Settlement Agreement ¶ 2(j)).

notwithstanding, the release shall not bar claims for medically diagnosed personal injuries, and shall not bar claims arising from any airborne emissions of pollutants, air contaminants, and noxious odors occurring after the Effective Date.  Such claims are expressly reserved." *Id.* The release, therefore, does not give Defendant the right to emit odors onto the property of Plaintiff and the Class in the future. It does not release potential claims for personal injuries or illness, to the extent that any such viable claims exist. It is designed to release only those claims that are at the heart of this litigation, which relate to the impact of odorous emissions on the usability and value of the Class members' homes.

The Settlement Agreement contains a provision limiting the total attorneys' fees and reimbursed costs and expenses, including expenses of settlement administration, to no more than $600,000. (Ex. 1, ¶ 3(f)). This cap was agreed upon after the underlying relief had been negotiated. (Coulson Decl. ¶ 14). The Settlement Agreement is not contingent upon the award of any amount to Class Counsel, and indeed Class Counsel has agreed not to appeal any such award. The Settlement Agreement also provides for an incentive award of $5,000 to Plaintiff, at the Court's discretion. (Ex. 1 ¶ 5(b)). This is the only way in which the treatment of Plaintiff differs from that of the Class.

The parties propose to provide notice to the Class in two primary ways. One is by sending the "long-form" notice to all residential addresses in the Class Area that can be identified with a reasonable effort. (See Coulson Decl. ¶ 16, Ex. B). As a supplement, the parties propose to publish the "short-form" notice in the Rochester Democrat and Chronicle. (See Coulson Decl. ¶ 17, Ex. C). Each of the notices provides potential Class Members with the essential information and deadlines related to the Settlement Agreement and directs them to a website which will be established by Class Counsel (the "Website") for further information. The Website will include

4

links to the Settlement Agreement, the long-form notice, the operative Complaint, and the Court's Preliminary Approval Order. (Coulson Decl. ¶ 19).

Each form of notice clearly informs Class members regarding their rights and deadlines to opt-out of, object to, or make a claim from the Settlement. The Notices clearly state that they contain only a summary of the Settlement Agreement and describe how Class Members can obtain additional information regarding the Settlement Agreement. All Class Members will have 60 days from the date the Notice is sent to opt out of or object to the Settlement Agreement from date the notice is mailed. To be eligible to participate and receive a distribution from the Settlement Amount, a Class member must submit a completed Claim Form to Plaintiff's counsel within 60 days of the Notice being mailed.

Based on Class Counsel's extensive experience litigating and resolving claims that are substantially similar to the claims alleged in this case, the relief (including remedial measures in addition to the significant monetary compensation) provided through the Settlement Agreement is fair, adequate, and reasonable, particularly in light of the limited release and the attendant risks and delay of potential further litigation. Plaintiff therefore requests that the Court grant the Settlement Agreement preliminary approval so that notice can be delivered to the Class.

## LEGAL STANDARD

"Courts generally favor the resolution of civil actions, particularly class actions, through settlement." *Velez v. Novartis Pharm. Corp.*, 2010 U.S. Dist. LEXIS 125945, at *30 (S.D.N.Y. Nov. 30, 2010). The Second Circuit has "recognized a presumption of fairness, reasonableness, and adequacy as to the settlement where 'a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.' Such a presumption is consistent with the 'strong judicial policy in favor of settlements, particularly in

the class action context.'" *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009)

(citations omitted).

In *Padovano v. FedEx Ground Package Sys.*, No. 16-CV-17-FPG, 2019 U.S. Dist. LEXIS

107092 (W.D.N.Y. June 10, 2019), this Court expounded the revised procedure for approving class

action settlements pursuant to the December, 2018 amendments to Fed. R. Civ. P. 23(e).

> 'A class action settlement approval procedure typically occurs in two stages: (1) preliminary approval . . . and (2) final approval.' At the first stage, the Court reviews the 'proposed terms of settlement and make[s] a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms.' ... If the proposed settlement passes muster as a preliminary matter, the Court directs notice to potential class members and holds a hearing on the question of 'final court approval.'
> …
> Under the [revised Rule 23(e)], at the preliminary approval stage the parties must provide the Court 'with information sufficient to enable it to determine whether to give notice of the proposal to the class … If the Court concludes based on the record that it will likely be able to '(i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal,' preliminary approval is appropriate and the Court must direct notice to all potential class members.

*Id*. at *5-6 (citations omitted).

## ARGUMENT

I.    **THE COURT IS LIKELY TO ULTIMATELY APPROVE THE SETTLEMENT AS FAIR, ADEQUATE, AND REASONABLE**

The first requirement, Rule 23(e)(1)(B)(i), directs the Court to the factors relevant to final approval. A court must determine whether the proposed settlement is likely to be 'fair, reasonable, and adequate' considering the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, [and] . . .
> (D) the proposal treats class members equitably relative to each other.

*Padovano,* 2019 U.S. Dist. LEXIS 107092, at *7. Each of these factors is satisfied here. Plaintiff

and his counsel have zealously represented the Class and negotiated an arm's length Settlement

Agreement that secures ample relief while treating members of the Class equitably relative to one another. The Court will therefore likely approve the Settlement Agreement as fair, adequate, and reasonable once the Class has received notice and been presented with the opportunity to provide its views on the agreement.

### A. The Class Representatives and Class Counsel Have Adequately Represented the Class.

The first two factors under Rule 23(e)(2) "identify matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." *Padovano,* 2019 U.S. Dist. LEXIS 107092, at *7-8. The adequacy analysis, long part of the prerequisites for certifying a settlement class, has now been grafted onto the "approval" prong of preliminary settlement approval.

> [T]he focus . . . is on the actual performance of counsel acting on behalf of the class. Courts may consider the nature and amount of discovery and the conduct of negotiations, particularly as they pertain to attorney's fees. In addition, adequacy of representation is measured not only by reference to class counsel—who must be qualified, experienced, and generally able to conduct the litigation—but also to class representatives—who must have sufficient knowledge and involvement to be able and willing to protect 'the interests of the class against the possibly competing interests of the attorneys.'

*Id*. at *8 (citations omitted).

Plaintiff's counsel is indeed "qualified, experienced, and generally able to conduct" litigation of this sort. *See Id.* As one federal court noted,

> Class Counsel—from the Detroit-based firm Liddle & Dubin, P.C.—are among the few attorneys that specialize in class-action odor-nuisance litigation. Class Counsel skillfully and vigorously investigated and prosecuted the Class's claims … Absent the skill and efficiency of Class Counsel, it is also unlikely that individual Class Members could have obtained any recovery on their nuisance claims.

*Batties v. Waste Mgmt. of Pa., Inc.*, No. 14-7013, 2016 U.S. Dist. LEXIS 186335, at *47 (E.D. Pa. May 11, 2016). Plaintiff's counsel has been appointed to represent classes of residents impacted

by pollution in dozens of similar cases. (Coulson Decl. ¶¶ 6-8). Like the instant case, many of those cases involved landfills. *See, e.g., Batties*, 2016 U.S. Dist. LEXIS 186335; *Beck v. Stony Hollow Landfill, Inc.*, No. 3:16-cv-455, 2018 U.S. Dist. LEXIS 199221, at *14 (S.D. Ohio Nov. 26, 2018).

In *Padovano*, this Court found that class counsel had adequately represented the interests of the Class where it "vigorously prosecuted this action, engaging in discovery, mediation, and meaningful motion practice." *Padovano,* 2019 U.S. Dist. LEXIS 107092, at *8. Here, class counsel successfully advanced the Class' claims past two dispositive motions as well as opposition to filing a third amended complaint. They conducted a thorough investigation which included a detailed inquiry into reports of odors from the landfill, public information requests to governmental entities, receiving and reviewing large volumes of public documents, and surveying thousands of area residents. (Coulson Decl. ¶ 11). Counsel negotiated a favorable Settlement Agreement, including through the use of a neutral mediator, over a period of several months. That process included extensive negotiations, client involvement, and discovery on issues related to the scope of improvement measures.

Plaintiff himself as been more than adequate as a representative of the Class. Mr. D'Amico's claims and interests are the same as those of his neighbors. He assisted with the investigation of the claims in this case, agreed to publicly stand for his neighbors, and undertook the litigation well before any similar litigation had been filed. In considering settlement, Mr. D'Amico was one of the most thoughtful and involved named Plaintiffs that the undersigned counsel has ever worked with. (Coulson Decl. ¶ 20). He posed dozens of inquiries regarding the nature of the relief, the release, the attorneys' fees, the impact the settlement would have on related litigation, and the settlement's administration, among others, which advanced the cause of the

Class. (*Id.*) Due to Mr. D'Amico's willingness to serve in this way in combination with the efforts of his experienced counsel, his neighbors have been conferred significant benefits in the form of both monetary and non-monetary relief. The adequacy requirement is plainly satisfied such that the Court is likely to ultimately approve the Settlement Agreement after feedback is received from the Class.

### B.  The Proposal Was Negotiated at Arm's Length.

"There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 2 Herbert B. Newberg and Alba Conte, *Newberg On Class Actions*, §11.41, at 11-88 (3d ed. 1992). Without even considering any such presumption, the Settlement Agreement has all the hallmarks of an arm's-length compromise. It was reached after Plaintiff's claims survived two dispositive motions which were extensively briefed and argued. It was negotiated with the assistance of a former magistrate judge of this Court, who recommended the resulting terms to both sides. Even after mediation, there was a prolonged negotiation over additional settlement terms before a deal was struck. At all times, Mr. D'Amico and his counsel acted in the interests of the Class as a whole. The arm's length nature of the settlement further counsels in favor of its ultimate approval.

### C.  The Relief Provided for the Class is Adequate.

To determine whether the settlement provides adequate relief to the class, Rule 23(e)(2)(C) instructs that a court should consider:

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3).

*Padovano,* 2019 U.S. Dist. LEXIS 107092, at *10-11 (citing Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv)).

An analysis of the relief conferred by the Settlement Agreement as compared against the potential recovery considering the risks, costs, and delay of continued litigation demonstrates that the settlement is more than adequate. "Recovery for temporary injury to real property may be measured by the value of the loss of use, which is determined by the decrease in the property's rental value during the pendency of the injury." *Jenkins v. Etlinger*, 432 N.E.2d 589, 591 (NY Ct. App. 1982); *Volunteer Fire Assn. of Tappan, Inc. v. County of Rockland*, 101 A.D.3d 853, 857, (2nd Dep't. 2012). Recovery in "a nuisance claim is not strictly speaking solely limited to a property damage claim but also incorporates a plaintiff's personal legal rights and/or interests[,]" specifically the right to freely use and enjoy one's property. *Ivory v International Bus. Machines Corp.*, 2012 N.Y. Misc. LEXIS 6126, *5-6, 2012 NY Slip Op 52125(U), 3-4, 964 N.Y.S.2d 59 (Broome Cty. Sup. Ct. Nov. 15, 2012). Damages resulting from noxious odors that substantially interfere with Plaintiff's use and enjoyment of his property are recoverable. *Nalley v. General Elec. Co.*, 165 Misc. 2d 803, 811, 630 N.Y.S.2d 452, 457 (Rensselaer Cty. Sup. Ct. 1995). Recovery is permitted for all damages sustained within the "three years prior to the commencement of the action." *Id.* at 458.

A simple damages analysis illustrates the sufficiency of the Class relief.  Over the Class Period, average rental prices in Fairport have hovered at approximately $1,800.[2] In less-recently developed areas like the Class Area, odorous landfills are known to depress neighboring property values in the range of 3-4%. (Coulson Decl. ¶ 15, Ex. A, p. 17 (312)). Conservatively assuming the higher 4% decrease, the property that rents for $1,800 should rent for $1,875. Therefore, the "blackboard" diminished rental value damages for each household in the Class Area can be estimated at $75 per home, per month, for a total of $24,750,000 (66 months x $75 per home x

---

[2] https://www.zillow.com/fairport-ny-14450/home-values/ (last visited July 14, 2020).

5,000 homes). This figure is the absolute maximum that the Class could hope to obtain for loss of use after achieving class certification, prevailing on the merits, obtaining the maximum damages, and surviving any appeals. Plaintiff's experienced counsel is aware of no landfill odor nuisance class action that has ever arrived at such a result.

The Settlement Agreement's benefits represent approximately 9.3% of the theoretical maximum potential recovery. Under the circumstances, this is an excellent result. "[W]hile it is proper to assess the settlement amount by comparing it with the 'best possible' recovery, that does not mean that the Court should rigidly measure the settlement amount against some purely theoretical, best-case-scenario sum, which plaintiffs may have had little realistic chance of actually recovering." *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 179-80 (W.D.N.Y. 2011). "Due to the complexities inherent in this case, the certainty of this settlement amount has to be judged in this context of the legal and practical obstacles to obtaining a large recovery." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery[.]" *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 495 (S.D.N.Y. 2018) (quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974)). Significantly lower percentages of the maximum potential recovery are routinely recognized as good results for classes. "[T]he class members are receiving only approximately 5% of their maximum potential recovery. But considering the factual and legal hurdles that the class would have had to overcome before securing a favorable judgment, the current settlement represents a good result for the class members." *Grice v. Pepsi Bevs. Co.*, 363 F. Supp. 3d 401, 409 (S.D.N.Y. 2019); *see also Cagan v. Anchor Sav. Bank FSB*, No. CV-88-3024, 1990 U.S. Dist. LEXIS 11450, at *34-35 (E.D.N.Y. May 17, 1990) (approving settlement value of 1.9% of

maximum potential recovery). "The prompt, guaranteed payment of the settlement money increases the settlement's value in comparison to some speculative payment of a hypothetically larger amount years down the road, and when judged against the realistic, rather than theoretical, potential for recovery after trial, the settlement amount is extremely beneficial." *LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. at 495-96(citations and internal quotation marks omitted).

The result in this case compares favorably with recent settlements in other landfill odor class actions. For example, in *Batties*, 2016 U.S. Dist. LEXIS 186335, the court approved a settlement of $1,400,000 in cash and $600,000 worth of improvement measures for a class that was nearly twice the size (9,664 residential addresses) of the instant Class. In *Ng v. International Disposal Corp. of California*, Case No. 112CV228591 (Santa Clara, CA Super. Ct. , August 1, 2016), the court approved a settlement of $1,200,000 in cash and improvement measures with a minimum value of $2,750,000 for a class including nearly 7,000 households. In *McCarty v. Oklahoma City Landfill, Inc.* (W.D. Okla. Case No. CIV-12-1152-C, April 11, 2016), the court approved a settlement of $580,000 in cash and $1,250,000 in improvement measures. Such complex cases rarely go to trial because of the substantial degree of risk in establishing class certification, liability, and damages and the desirability of immediate relief, including improvements to promptly reduce odor emissions.

### 1. The Costs, Risks, and Delay of Trial and Appeal

The relief achieved in the Settlement Agreement must be considered against the costs, risks, and delay of prosecuting this action through a trial and possible appeal. The difficulties of doing so in a case of this nature are difficult to overstate. Odor nuisance class actions are different from many other substantive categories of class action litigation, in that they are not infrequently

denied certification depending on the underlying factual circumstances. Beyond certification, liability and damages in such cases entail complex scientific proof and competing observational testimony that makes the ultimate outcome very difficult to predict. Beyond that, appellate courts have been particularly hostile to large jury awards in odor nuisance cases. *See, e.g.*, *Babb v. Lee Cty. Landfill SC, LLC*, 747 S.E.2d 468, 471 (2013) (reducing, via certified question, $2,332,500 jury verdict in *Babb v. Lee Cty. Landfill SC, LLC*, 298 F.R.D. 318, 320 (D.S.C. 2014) based on limitations on recoverable damages).

Plaintiff continues to believe that class certification would have been appropriate in this case even absent settlement. But Plaintiff also recognizes that class certification, particularly in an environmental case, is anything but certain. While class actions have become increasingly difficult to certify in general, some courts have extended that difficulty to environmental class actions in particular. *See Brooks v. Darling Int'l, Inc.,* No. 1:14-cv-01128-DAD-EPG, 2017 U.S. Dist. LEXIS 49660 (E.D. Cal. Mar. 30, 2017); *Hamilton v. 3D Idapro Sols., LLC*, No. 18-cv-54-jdp, 2019 U.S. Dist. LEXIS 128217, at *3 (W.D. Wis. Aug. 1, 2019). Therefore, beyond the "rigorous analysis" standard now employed in Rule 23 class actions, Plaintiff recognizes the significant risk in obtaining class certification. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). Further, even where certification is granted, the possibility of appeal and/or decertification remains. *See Powell v. Tosh*, No. 5:09-CV-00121, 2013 U.S. Dist. LEXIS 120448, at *5 (W.D. Ky. Aug. 2, 2013) (decertifying class).

Even if Plaintiff were able to obtain class certification, he would have to affirmatively establish the spread of Defendant's emissions and that those emissions were of such frequency, intensity, and duration to constitute a nuisance. Defendant would likely point to several other area facilities as possible sources of the odors that the Class would testify to and challenge every aspect

of Plaintiff's proof of Defendant's emissions. This would likely involve competing scientific testimony of sufficient complexity that the ultimate outcome would be anything but certain. Further, Defendant would be likely to vigorously oppose Plaintiff's evidence on damages. Determining the damages attributable to a nuisance requires that those damages be isolated from numerous other factors that impact value. One can be sure that Defendant would have offered evidence of countless other factors, real or hypothetical, claiming that much or all of any loss in value claimed to be attributable to Defendant's landfill was actually caused by those other factors. After considering the range of possibilities, it is Plaintiff's counsel's experienced opinion that given the potential risks, rewards and costs of continuing litigation, that settlement on the proposed terms is the most desirable course for Plaintiff and the Class to take. Those risks further counsel in favor of approving the Settlement Agreement.

Environmental class actions are inherently expensive to litigate, and the complexity involved lends itself to prolonged litigation. This case was filed in January of 2018, and absent this resolution the parties would still be litigating issues related to class certification, having not yet reached the merits of the case or Plaintiff's damages. Continued litigation of this complex matter could drag on for years with Class Members receiving no relief while having any eventual award diminished by the related costs, including costly scientific expert testimony. The Settlement Agreement avoids the risk, complexity, time, and cost of further litigation, and provides the Class with guaranteed monetary and non-monetary relief on an immediate basis. The implementation of improvement measures at the landfill makes this factor even more important than it might otherwise be. Every day that the litigation dragged on would likely have been another day that the Class did not have the benefit of the improvement measures and their effect on the landfill's emissions. This is another reason that experienced Class Counsel recommends the Settlement.

### 2. *The Effectiveness of the Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class-Member Claims*

"[I]n the case of a large class action the apportionment of a settlement can never be tailored to the rights of each plaintiff with mathematical precision." *LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. at 496 (*quoting In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997) (per curiam)). "Accordingly, 'a plan of allocation need not be perfect.'" *Id.* (*quoting Hart v. RCI Hosp. Holdings, Inc.*, No. 09 Civ. 3043 (PAE), 2015 U.S. Dist. LEXIS 126934 at *12 (S.D.N.Y. Sept. 22, 2015)). "Rather, '[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.'" *Id.* (citation omitted). Ultimately, "[t]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 William B. Rubenstein, *Newberg on Class Actions* § 12:15 (5th ed.) (Westlaw 2018).

This Court has previously determined that a "*pro rata* formula for distributing proceeds is reasonable." *Padovano*, 2019 U.S. Dist. LEXIS 107092, at *13; *see also Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (noting that *pro rata* allocation plan treats class members equitably and "has the benefit of simplicity"). Here, the *pro rata* formula makes sense because the potential degree in variation between the claims of Class members is outweighed by the cost, uncertainty, and administrative infeasibility of attempting to distinguish amongst claims. Identifying, with particularity, the extent to which the usable value of any particular property varies from another would require a combination of emissions modeling and specialized appraisal that would be sufficiently costly to reduce the Class' aggregate recovery beyond its limited benefit to any particular Class member. *Pro rata* distribution avoids these costs as well as the inevitable

disputes that Class members would have with any distinctions made pursuant to an effort to treat them differently than their neighbors.

The claims process is as simple as it can be without inviting fraud. There is no reliable way to know who actually occupies a home without soliciting information in the form of a claim form. In administering the settlement, counsel cannot simply mail nameless checks to addresses and hope that they get into the right hands. Instead, the simple claims process, which requires basic proof of identity and qualification, ensures that funds are distributed to qualifying Class members and no one else. It also ensures that the *pro rata* calculations are made appropriately, such that the settlement funds are fully distributed. Both the method for making claims and the method for distributing funds are designed to be maximally effective for getting the Class relief into Class members' hands.

### 3. The Terms of the Proposed Award of Attorney's Fees

The Settlement Agreement provides for Plaintiff's counsel to seek attorneys' fees and reimbursement of costs and expenses (including costs of notice and administration) not to exceed a combined total of $600,000. The costs of notice and administration have not yet been borne, but at present Plaintiff's counsel has advanced approximately $10,000 in costs and expenses in the approximately 2.5 years this case has been litigated. (Coulson Decl. ¶ 21). Anticipating costs for delivering notice and payment to the class, it is likely that the fees requested will amount to approximately $580,000. (*See Id.*) This amounts to approximately 25% of the total settlement.[3]

---

[3] Courts in this circuit generally consider the entire settlement value in calculating attorney fees, but sometimes consider the more "conservative and less-accepted methodology of percent against monetary fund (rather than overall value) [.]" *Velez,* 2010 U.S. Dist. LEXIS 125945, at *51-52. As compared against the monetary fund only, this fee request would constitute approximately 44%.

In class action settlements involving common funds "district courts have discretion to apply either the lodestar method or the percentage-of-recovery method to calculate a reasonable fee." *City of Birmingham Ret. & Relief Sys. v. Davis*, No. 19-1378-cv, 2020 U.S. App. LEXIS 8686, at *2 (2d Cir. Mar. 17, 2020) (citation omitted). "District courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater." *Velez*, 2010 U.S. Dist. LEXIS 125945 at *59-60 (collecting cases); *see also In re Lloyd's American Trust Fund Litig*., No. 96 Civ. 1262, 2002 U.S. Dist. LEXIS 22663, at *76 (S.D.N.Y. Nov. 26, 2002) ("In this district alone, there are scores of ... cases where fees ... were awarded in the range of 33.3 percent of the settlement fund."). "Fee awards for class action in cases that are 'low/medium' risk average 26.2 percent of total recovery, and in cases that are 'high' risk average 35.1 percent of total recovery." *Velez,* 2010 U.S. Dist. LEXIS 125945 at *60-61. "Recent studies of attorney's fees awards in common fund settlements of a size similar to this one have found that the median percentage for such awards ranged from 26.4% to 30%." *Grice*, 363 F. Supp. 3d at 407.

Counsel's fees are subject to the Court's approval, but the amount to which they have voluntarily agreed to limit the request is well within the typical range in this circuit. Importantly, the Court will have the benefit of determining the precise monetary and non-monetary relief for the Class. The settlement funds will be distributed pro-rata such that this is not a "claims-made" settlement and there is no provision for the reversion of the funds to the Defendant. Counsel will be compensated concurrently with Class member payments, such that counsel's fee award will not be based on any projection regarding the amount of Class member compensation. These conditions counsel further in favor of the likelihood that the Court will ultimately approve the Settlement Agreement.

### 4. There are No Agreements Made in Connection With Settlement Outside the Settlement Agreement Itself.

This consideration is inapplicable, as the Settlement Agreement contains all agreements between the parties with respect to the resolution of this litigation. However, in the spirit of complete disclosure, the parties did agree to a "term sheet" following mediation, which contains certain material provisions to be incorporated into the Settlement Agreement and which the Settlement Agreement subsumes by its own terms.

**D.  The Proposal Treats Class Members Equitably Relative to Each Other.**

The Settlement Agreement treats all Class members, including Plaintiff, equitably relative to one another. "Consideration under this Rule 23(e)(2) factor could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  *Padovano,* 2019 U.S. Dist. LEXIS 107092, at *13-14 (citation omitted). The *pro rata* distribution formula is fair and reasonable under the circumstances, as previously addressed. The scope of the release is the same as to all Class members, in that it encompasses only claims arising from the allegations in the complaints but specifically excludes future claims and potential personal injury claims, which would likely impact Class members differently. The only difference in treatment under the Settlement Agreement is that Plaintiff may seek an incentive award, at the Court's discretion, of no more than $5,000.

The Settlement Agreement is not contingent upon Plaintiff receiving any incentive award, and the award is well within the range of those typically approved in similar cases. (*See, e.g., Batties*, 2016 U.S. Dist. LEXIS 186335 at *54 (approving incentive awards of $5,000 each for four named Plaintiffs in landfill odor nuisance suit with total settlement value of $2,000,000.) This modest award is well below what this Court has previously approved. *See, e.g., Padovano*, 2019 U.S. Dist. LEXIS 107092, at *14 (awarding $15,000 incentive payments in addition to their share

18

of the proceeds) (citation omitted). Apart from a potential incentive award, the Settlement

Agreement does not grant any Class Member different treatment.

## II.    THE COURT IS LIKELY TO CERTIFY THE CLASS FOR SETTLEMENT PURPOSES

> To obtain certification of a class action for money damages, a plaintiff must satisfy prerequisites of numerosity, commonality, typicality, and adequacy of representation, pursuant to Rule 23(a), and must also establish that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy, pursuant to Rule 23(b)(3)… In addition to the explicit requirements of Rule 23(a), the class must satisfy the implied requirement of ascertainability.

*Padovano*, 2019 U.S. Dist. LEXIS 107092, at *15-17.

### A.  The Settlement Class is Ascertainable.

The Second Circuit recognizes an initial "implied requirement of ascertainability"

under Rule 23. *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015). "The 'touchstone

of ascertainability' is 'whether the class is sufficiently definite so that it is administratively feasible

for the court to determine whether a particular individual is a member … A class is ascertainable

when defined by objective criteria . . . and when identifying its members would not require a mini-

hearing on the merits of each case." *Padovano*, 2019 U.S. Dist. LEXIS 107092, at *17 (quoting

*Id.* at 24-25).

Here, the class is defined solely by reference to property interests within a confined

geographic area, such that it entails reference only to objective criteria. There is no requirement

that a Class member prove the merits of their claim (that they or their have been exposed to odors).

As in *Batties*, "the Proposed Class is well defined with reference to clear, objective criteria within

a small geographic area, allowing for a simple determination as to whether property falls within

the Class Area's boundaries." *Batties*, 2016 U.S. Dist. LEXIS 186335, at *9. The implied ascertainability requirement is therefore satisfied.

## B. The Settlement Class Satisfies the Numerosity Requirement.

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Although precise calculation of the number of class members is not required, and it is permissible for the court to rely on reasonable inferences drawn from available facts, numbers in excess of forty generally satisfy the numerosity requirement." *Spencer v. No Parking Today, Inc.*, 2013 U.S. Dist. LEXIS 36357, at *47 (S.D.N.Y. Mar. 15, 2013) (citation omitted). There are in excess of 5,000 households in the Class Area, plainly satisfying this prerequisite.

## C. The Settlement Class Satisfies the Commonality Requirement.

Rule 23(a)(2) requires a showing of the existence of questions of law or fact common to the class. *See Dukes*, 131 S.Ct. at 2548. "Their claims must depend upon a common contention of such a nature that it is capable of class-wide resolution which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 2551.

Plaintiff's claims, and those of the Class, arise from common questions at the heart of the case involving Defendant's alleged failure to adequately control the landfill's emissions from dispersing into the surrounding area, and the impact of those emissions on Class Members' homes. In similar cases, courts have observed that common questions include:

(1) Whether Defendant failed to employ adequately various available odor-mitigating techniques?;
(2) Whether Defendant owed a duty to its neighbors in the Class Area?;
(3) Assuming the existence of a duty, did Defendant breach that duty respecting Plaintiffs and the Proposed Class Members?;

    (4)  What constitutes a substantial and unreasonable interference with the use and enjoyment of property for a reasonable person within the Class Area?;

    (5)  To where and in what concentrations have the Landfill's emissions been dispersed?;

    (6)  What are the sources of the odorous emissions from the Landfill?; and

    (7)  Are there sources of odorous emissions in the Class Area other than those emanating from the Landfill?

*Batties*, 2016 U.S. Dist. LEXIS 186335, at \*10-11. The same is true here. This common nucleus of operative facts gives rise to functionally identical legal claims. The claims of the Plaintiff and the other class members involve the same type of injuries and are based on the same legal theories. The commonality prerequisite is satisfied.

### D.  The Settlement Class Satisfies the Typicality Requirement.

"Typicality under Rule 23(a) requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Hardgers-Powell v. Angels In Your Home LLC*, 330 F.R.D. 89, 99 (W.D.N.Y. 2019); *accord Padovano,* 2019 U.S. Dist. LEXIS 107092, at \*29. "The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* Plaintiff's claim is typical of the claims of the Class, in that it arises from the same course of events and relies on similar legal arguments. For the same reasons that the commonality requirement is satisfied, so too is the typicality prerequisite.

### E.  The Settlement Class Satisfies the Adequacy of Representation Requirement.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequate representation is usually presumed in the absence of contrary

evidence. 2 *Newberg on Class Actions* §7.24 at pp. 7-81-82. The named Plaintiff in this case advances claims that are entirely typical of the claims of the absent class members. He has no conflict of interest with his neighbors, residents of the neighborhoods surrounding the landfill seeking redress for impacts that have genuinely diminished their ability to use and enjoy their homes. Plaintiff respectfully requests that his chosen counsel, Steven Liddle, Nicholas Coulson, and Jan Smolak be appointed class counsel. Rule 23(g)(1)(C) sets forth the factors for the Court to consider in making a determination regarding class counsel:

> In appointing class counsel, the court
>
>> (A) must consider:
>>
>>> (i)     the work counsel has done in identifying or investigating potential claims in the action,
>>> (ii)    counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,
>>> (iii)   counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class;
>>
>> (B) may consider other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;
>>
>> (C) may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees and nontaxable costs; and
>>
>> (D) may make further orders in connection with the appointment.

Fed. R. Civ. P. 23(g)(1)(C). Plaintiff's counsel has performed a great deal of work in both identifying and investigating the claims in this action.  Plaintiff's counsel, Liddle & Dubin, P.C., has significant experience in complex litigation and class actions involving claims of the type asserted in this action, including cases arising from industrial emissions. (Coulson Decl. ¶¶ 6-8). Counsel are knowledgeable in the applicable law, and are able, willing, and planning to commit

the resources necessary to zealously represent the class as they have done throughout the litigation. Plaintiff therefore respectfully requests that this court appoint her counsel as counsel for the class.

### F.  The Settlement Class Satisfies the Predominance Requirement.

"Predominance tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation … The requirement's purpose is to ensure that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Padovano,* 2019 U.S. Dist. LEXIS 107092, at *31 (*quoting Angels in Your Home*, 330 F.R.D. at 100) (internal quotation marks omitted). "The requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Id.* "[T]he predominance inquiry will sometimes be easier to satisfy in the settlement context … Because predominance and manageability overlap, the existence of a settlement that eliminates manageability problems can alter the outcome of the predominance analysis." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 56 (E.D.N.Y. 2019) (citations and internal quotation marks omitted); *see also* 2 *Newberg on Class Actions* § 4:63 (5th ed. 2018) ("in settlement class actions, because manageability need not be a concern, predominance — the main focus of manageability — recedes in importance as well . . . . Courts therefore regularly certify settlement classes that might not have been certifiable for trial purposes because of manageability concerns.").

As noted in the superiority portion of the argument, Defendant's conduct and emissions form an essential factual link between the entire Class and the Defendant. The claims of Plaintiff

and the Class rely on the same legal theories and indeed the same evidence. Given the nature of analyzing industrial emissions, making a determination about where Defendant's emissions travel resolves one Class member's claim just as clearly as it resolves the claim of her neighbor. As such, the common questions in this case, such as what Defendant might have done or failed to do in controlling the landfill's emissions, what those emissions are, where the emissions travelled, and the effect they would have on an ordinary person, predominate over any questions that might apply only to individual Class members.

### G.  The Settlement Class Satisfies the Superiority Requirement.

Rule 23(b)(3) sets forth the requirement "that class action [be] superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). To assess superiority, the Court considers the following factors: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). Therefore, to satisfy the superiority requirement, the moving party must show that the class action presents economies of time, effort and expense, and promotes uniformity of decision." *Padovano*, 2019 U.S. Dist. LEXIS 107092, at *32-33 (citation and internal quotation marks omitted).

Any Class members who may have had an interest in individually controlling the prosecution of separate actions are likely to have filed suit at this point, such as the plaintiffs in *Fresh Air for the Eastside v. Waste Management of New York, L.L.C.,* Case No. 6:18cv6588, and they are free to continue with those actions. There is no other forum in which these claims can be concentrated. There are no manageability concerns given the posture of settlement. The alternative

to class litigation of these claims is costly, wasteful litigation in Class members' individual capacities. The economic realities of such litigation would mean that many of the Class members' claims would never be brought, though hundreds or more likely would, needlessly wasting the resources of the parties and the courts. As one court said in granting certification of a class in an air pollution case, "[l]itigation of this matter as a class action is … superior to conducting individualized cases for each potential class member. Indeed, having hundreds of property owners file the same action against the same defendants for the same types of injury is a clear waste of judicial resources." *Ponca Tribe of Indians v. Cont'l Carbon Co.*, No. CIV-05-445-C, 2007 U.S. Dist. LEXIS 577, at *25 (W.D. Okla. Jan. 3, 2007). Here too, the Court will likely find that class litigation is superior.

### H.  The Notice Proposal is Appropriate.

Rule 23(e) requires the Court to direct notice "in a reasonable manner to all class members who would be bound by the proposal." Fed.R.Civ.P. 23(e). As previously noted, the Class will be notified by direct mail and publication. The notices will clearly inform them of their rights and the deadlines to exercise them. Class Members will have easy access to the full Settlement Agreement and related documents, which will be publicly available on Counsel's website. The Court should therefore approve the Notice plan so that the feedback of the Class can be received for consideration at the final approval stage.

## CONCLUSION

The Settlement Agreement is a fair, adequate, and reasonable compromise which results in a prompt and beneficial outcome for the Class while avoiding the significant cost, risk, and delay of further litigation.   Plaintiff therefore requests that the Court preliminarily approve the Settlement Agreement and order that notice be delivered to the Class.

Dated: July 14, 2020                                Respectfully submitted,


                                                    /s/ Nicholas A. Coulson
                                                    Steven D. Liddle
                                                    Nicholas A. Coulson
                                                    LIDDLE & DUBIN, P.C.
                                                    975 E. Jefferson Ave
                                                    Detroit, MI 48207
                                                    Telephone: (313) 392-0015
                                                    Facsimile: (313) 392-0025
                                                    sliddle@ldclassaction.com
                                                    ncoulson@ldclassaction.com

                                                    Jan M. Smolak
                                                    MICHAELS & SMOLAK, P.C.
                                                    Office and P.O. Address
                                                    17 East Genessee Street, Suite 401
                                                    Auburn, New York 13021
                                                    (315) 253-3292
                                                    smolak@michaels-smolak.com

                                                    Attorneys   for   Plaintiff   and   the
                                                    Putative Class

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 14, 2020, a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court using the Court's CM/ECF System, which will transmit a copy to all counsel of record in this action.

s/ Nicholas A. Coulson
Attorney for Plaintiff and the Putative
Class
